THE STATE OF NEVADA, *ex rel.* WM. SHARON *et al.,* APPELLANTS, *v.* A. D. TREADWAY *et al.,* RESPONDENTS.

SCHOOL LAND WARRANT NOT RECEIVABLE FOR OTHER THAN SCHOOL OR LIEU LAND. Where one Cleaveland applied to the state to purchase certain public land, which however was not part of a sixteenth or thirty-sixth section, or of land selected in lieu thereof, and deposited a land warrant issued under the act of February 27th, 1865, to pay therefor, (Stats. 1864–5, 173 ; 1866, 194): *Held,* that such warrant was not receivable in payment for that class of land, and that no right accrued to Cleaveland or his grantees.

LANDS PURCHASABLE WITH SCHOOL LAND WARRANTS. The only land which could be purchased with a school land warrant, as the law stood in 1868 and 1869, was that embraced in a sixteenth or thirty-sixth section or land selected in lieu thereof.

ENTRY OF LAND ON UNLOCATED LAND WARRANTS. The privilege given by Section 7 of the Act of April 2, 1867, (Stats. 1867, 165) to " the holders of any unlocated land warrant," is limited to lands " subject to sale by private entry."

APPEAL from the District Court of the Second Judicial District, Ormsby County.

This was an action by The State of Nevada *ex rel.* William Sharon and Joseph A. Rigby, and William Sharon and Joseph A. Rigby, against A. D. Treadway and T. J. Edwards for an injunction to restrain Treadway from collecting a judgment recovered by him in the case of *Treadway* v. *Sharon and Rigby,* (*ante,* 37) and Edwards, the clerk of the district court, from issuing execution thereon ; also for a decree declaring the patent issued to Treadway null and void. A preliminary injunction having been granted, it was afterwards on motion of defend-

ants dissolved; and it is from the order of dissolution that this appeal was taken.

After the appeal was taken, it was stipulated by the parties that the land described in the complaint was selected by the state on July 3d, 1868, in part satisfaction of the 500,000 acres granted to the state by the United States under the act of congress of 1841 and succeeding acts; and that the cause should be considered as if that fact had been so alleged in the pleadings. The selection was approved February 28th, 1869. Cleaveland made his application for the land and filed his school land warrant in April, 1867; in August, 1868, he sold to Joseph de la Montagnie and O. Dickinson, jr., the grantors of the plaintiffs Sharon and Rigby. Treadway procured his patent from the state in October, 1869.

*W. E. T. Deal* and *Williams & Bixler*, for Appellants.

I. The act of congress granting the state 500,000 acres of land was a present grant of that quantity, to be selected out of such lands as were open to selection in such manner as the state, by its legislature, should direct. As soon as the selection was made, the general gift of quantity became a particular gift of the specific lands located, vesting in her a perfect and absolute title to the same. *Bludworth* v. *Lake*, 33 Cal. 262, and cases there cited. Cleaveland, by the purchase of Warrant 21 and the location thereof on the land described, became entitled to the patent as soon as the selection was confirmed, there being no other applicant claiming the preferred right to purchase. The state held the legal title in trust only for him till the patent should come. *Bludworth* v. *Lake*, 33 Cal. 262; *O'Neale* v. *Cleaveland*, 3 Nev. 491; Stats. 1867, 165, Secs. 1 and 7.

II. Plaintiffs Sharon and Rigby are proper parties. All the plaintiffs are interested in having the patent set aside, and the state is interested in preventing the collection of the judgment in the action at law, obtained solely by means of the patent issued through the mistake and inadvertence of its officers, and by the practices of Treadway. Story's Eq. Pl., Sec. 278; *People* v. *Morrill*, 26 Cal. 360; *Central Pacific Railroad Co.* v. *Dyer et al.*, U. S. Supreme Court.

*Ellis & King*, for Respondents.

The patent cannot be set aside, conceding every allegation in the complaint to be true: The land warrant could never be located upon any land save a sixteenth or thirty-sixth section, or lieu land, by the terms of the law under which it was issued, until the passage of the Act of 1871. The land in question was not selected by the state until July 3d, 1868, or under the theory of the bill until July 28th, 1869; hence, it could not be sold as the sixteenth or thirty-sixth sections, and the warrant could not be located on this land at all.

By the Court, WHITMAN, J.:

There are many interesting and intricate questions raised on this appeal, which it is useless and improper to consider, because the primary position of respondents disposes of the entire case, in whatever phase it may be considered. The bill shows that one Cleaveland made application to purchase the southeast quarter of section thirty-four, township sixteen north, range nineteen east, and deposited with the register land warrant number twenty-one, issued under the state law of 1864–5 for the disposition of the sixteenth and thirty-sixth sections of the public lands, to pay therefor; that afterward he sold his interest in the land to the grantors of plaintiffs Sharon and Rigby; that subsequently he withdrew the warrant so deposited; and thereafter, on the twenty-seventh day of October, 1869, respondent Treadway secured a patent for the land.

This action is alleged to have been collusive—a conspiracy between Treadway and Cleaveland, and in fraud of the rights of the grantees of the latter; wherefore the demand for relief herein. To this demand respondent Treadway says, admitting all the facts charged, I deny the conclusion deduced; for the bill shows upon its face, in connection with the stipulation on file, that the land sought to be purchased was not selected in lieu of the sixteenth or thirty-sixth section — and the warrant deposited, being at the time of deposit and withdrawal only receivable in payment for that class of land, no rights accrued to Cleaveland, and no obligation was incurred by the state.

Upon examination of the statute in force at the time of Cleav-

land's application, deposit of the warrant and withdrawal of the same, it will be seen that the only land which could be purchased with such a warrant was that embraced in the sixteenth or thirty-sixth sections, or land selected in lieu thereof; within which category, it is expressly stipulated between the parties to this appeal, the land in question does not come. Stats. 1867, 165–171.

There is some language in Section 7 of the Act of 1867, which, it is claimed by appellants, would authorize a different conclusion; but a reference to the section will prove this position untenable. The privilege there given to "the holders of any unlocated land warrant" is limited to the lands "subject to sale by private entry." The act is confused and verbose, but still comprehensible; and no allowable construction will give it the meaning claimed by appellants.

This view disposes of the whole case, as there is nothing in the point that plaintiffs Sharon and Rigby, as occupants, had six months' preference of purchase, which was nullified by the premature issuance of the patent; for they did nothing within that time to indicate a desire to exercise such preference. The land was selected by the state, July 3d, 1868. *Treadway* v. *Mason and Rigby, ante.* The whole tenor of the act shows that the selection is to have date from the act of the state in making the selection; the most favorable construction for plaintiffs Sharon and Rigby could only extend such date to the time of approval of the selection by the United States, which was upon the twenty-eighth day of February, 1869, more than six months before the issuance of the patent to Treadway. The objection that notice was not published in the county where the land was situated does not touch this case, admitting that such neglect could, in any event, invalidate a patent; as that is required with regard to lands selected by the regents, not by the register, and which are offered for proposals. Sections 4, 5 and 6, Act of 1867.

Precisely how the purchase was made by Treadway does not appear by the bill; but whether regular or irregular, plaintiffs Sharon and Rigby cannot complain, unless some right of theirs was injuriously affected thereby; and so far as the state is concerned, it has no interest as shown by the bill, except perhaps to lend its

aid to protect a violated right of some one or more of its citizens; and, as has been seen, that is not the case here.

The order of the district court in dissolving the injunction was correct, and is affirmed.